OPINION
{¶ 1} Defendant-appellant Paul Ruzinsky appeals from an order of the trial court denying his post-sentence motion to withdraw his plea of no contest to one count of Rape and one count of Gross Sexual Imposition. Ruzinsky contends that the trial court erred by rejecting evidence he presented at the hearing on his motion that he had been promised by his original trial counsel that, if he took the plea bargain offered by the State, his sentence would be ordered to run concurrently with a prison sentence he was currently serving in Michigan, and he would be released in Ohio as soon as he was released from prison in Michigan, so that he would not have to serve time in an Ohio prison for these offenses.
 {¶ 2} Ruzinsky's original trial counsel testified, at the hearing on Ruzinsky's motion to withdraw his plea, that he made no promise concerning the sentence. We conclude that the trial court did not err in deciding to credit the testimony of Ruzinsky's original trial counsel, which is consistent with the record of the plea hearing. Accordingly, the order of the trial court is Affirmed.
 I {¶ 3} In 1994, Ruzinsky was charged by indictment with two counts of Rape and five counts of Gross Sexual Imposition. In 1996, as part of a plea bargain, he pled no contest to one count of Rape and to one count of Gross Sexual Imposition. The remaining counts were dismissed. Although a transcript of the plea hearing has not been made a part of the record on appeal, it was asserted at the hearing on Ruzinsky's motion to withdraw his plea, and not disputed by him, that it was made clear at the plea hearing that no promises had been made to Ruzinsky in exchange for his plea, other than the dismissal of the remaining charges.
 {¶ 4} When Ruzinsky was indicted in Ohio, he had already been sentenced to a term of from eight to twenty years in Michigan. He was sentenced on his Ohio convictions to a term of from eight to twenty-five years for Rape, and for two years for Gross Sexual Imposition, to be served concurrently with each other, and to be served concurrently with his Michigan prison sentence.
 {¶ 5} Ruzinsky was released from custody in Michigan in 2002, and was transported to Ohio, where he was eventually taken into custody to serve his Ohio sentence. He filed a motion to withdraw his no-contest plea in March, 2005. After a hearing, his motion was denied. From the denial of his motion to withdraw his plea, Ruzinsky appeals.
 II {¶ 6} As a preliminary matter, no transcript of the hearing on Ruzinsky's motion to withdraw his plea had been filed when the State filed its answer brief in this appeal. The State's argument, in its answer brief, is limited to a contention that Ruzinsky's assignments of error cannot be supported by the record, because there is no transcript of the motion hearing. After the State filed its brief, a transcript of the motion hearing was filed. Not unreasonably, the State, by telephone call to the administrator of this court, and later, by way of motion, has asked for an opportunity to brief this appeal in the light of, and with reference to, the transcript that has been filed. By the time this request was made, the transcript, and the rest of the record in this appeal, was in the possession of the judges to whom this appeal had by then been assigned, and the decisional process had begun, this appeal having been submitted on the briefs with no request for oral argument.
 {¶ 7} Under these circumstances, we would not be inclined to take any action in this appeal adverse to the interests of the State, without first extending to the State access to the transcript of the motion hearing, and an opportunity to re-brief the appeal. Because we have decided, after considering Ruzinsky's brief and the record, including the transcript of the motion hearing, that Ruzinsky's assignments of error are without merit and that the judgment of the trial court should be affirmed, we see no need for a re-briefing by the State, and our disposition of this appeal without a re-briefing by the State cannot result in any prejudice to the State.
 III {¶ 8} Ruzinsky's assignments of error are as follows:
 {¶ 9} "A PLEA THAT IS NOT MADE KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY IS UNCONSTITUTIONAL UNDER THE U.S. AND OHIO CONSTITUTIONS.
 {¶ 10} "A PLEA THAT IS NOT MADE KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL IS UNCONSTITUTIONAL UNDER THE U.S. AND OHIO CONSTITUTIONS."
 {¶ 11} Both of Ruzinsky's assignments of error depend crucially upon his assertion that his original trial counsel, Daniel J. O'Brien, promised him that if he took the offered plea bargain, not only would the sentences imposed be ordered to run concurrently with a sentence he was then serving in Michigan (which they were), but that he would not serve any prison time in Ohio for these offenses because, as soon as he was released in Michigan, he would be released in Ohio.
 {¶ 12} Ruzinsky offered testimony from himself and from his father to support this assertion. Although we have no transcript of the original plea hearing in our record, it was asserted at the hearing on Ruzinsky's motion to withdraw his plea, and not denied, that it was made clear at the plea hearing that no promises had been made to Ruzinsky in exchange for his plea, other than the promise to dismiss the remaining charges, which was fulfilled.
 {¶ 13} At the time of his plea, Ruzinsky was represented by two attorneys, Daniel J. O'Brien and Jeffrey Slyman. O'Brien testified on behalf of the State at the hearing on Ruzinsky's motion to withdraw his plea. O'Brien was lead counsel. Slyman testified on behalf of Ruzinsky, in Ruzinsky's case in rebuttal.
 {¶ 14} O'Brien's testimony concerning the issue of any promise made to Ruzinsky is worth setting out in some detail:
 {¶ 15} "Q. At any time in your conversations with the defendant — with, let's start with the defendant. Did you at any time ever make any promises to him about what his exact sentence would be?
 {¶ 16} "A. Absolutely not. See the record of the plea.
 {¶ 17} "Q. Did you at any time promise Mr. Ruzinsky that he would serve no time in the State of Ohio?
 {¶ 18} "A. Absolutely not. See the plea.
 {¶ 19} "Q. Did you ever tell Mr. Ruzinsky exactly that his sentence would be 8 to 25 and it would run concurrent? Did you ever make him any promise of that?
 {¶ 20} "A. I absolute [sic] did not. In fact we never knew whether it would be concurrent or not and that was what we were trying to get which we felt was a really big, big, big thing from Judge Foley a concurrent sentence, counting the Michigan time. At that time he had already started the Michigan sentence.
 {¶ 21} "Q. So there had been discussions between yourself and Ms. Burk concerning potential sentences in this case, correct?
 {¶ 22} "A. That's correct.
 {¶ 23} "Q. And amongst that was there discussions of a range of sentence that Mr. Ruzinsky would get?
 {¶ 24} "A. That is correct.
 {¶ 25} "Q. Was there ever any meeting of the minds prior to the plea exactly what Mr. Ruzinsky's sentence would be?
 {¶ 26} "A. There was not. See the entry of the plea proceedings. That's exactly the way it was.
 {¶ 27} "Q. Matter of fact, at the time of the plea, did the prosecution team set forth on the record what the plea would be?
 {¶ 28} "A. Yes, it was, in the presence of Mr. Ruzinsky and his mother and father.
 {¶ 29} "Q. And would it be fair to kind of couch that the plea talked about Mr. Ruzinsky would be pleading to certain charges, like one count of rape and one count of GSI and other charges would be nulled [sic]?
 {¶ 30} "A. That is correct, multiple charges were nulled [sic] and we were allowed to enter no contest plea for the felony one rape.
 {¶ 31} "Q. And would it be correct that Judge Foley listed to the defendant in your presence the range of sentences, including minimums and maximums on both the rape and GSI?
 {¶ 32} "A. Yes, he did.
 {¶ 33} "Q. And also at that time there was discussion, would it be correct when Judge Foley indicated he didn't know at that time whether — this is on the record, whether or not the sentence would be concurrent or consecutive?
 {¶ 34} "A. That is correct and that was the big consideration. Believe me.
 {¶ 35} "Q. Did you at any time promise your client the exact sentence he would receive from Judge Foley at or before the plea?
 {¶ 36} "A. I did not promise him anything because I did not know myself.
 {¶ 37} "* * *
 {¶ 38} "Q. And Mr. O'Brien, in your years of practice, are you well aware of what a promise to a client means?
 {¶ 39} "A. I am asked to promise something or guarantee something on a minimum of five times a day. I'm sure the two defense lawyers sitting there are thousands and thousands of times in different ways, means, manners, shades, return of the money if it doesn't go exactly right, et cetera, et cetera, and no, I have resisted any guarantees, promises. Just tell them to go someplace else if that's what they're looking for. Go hire an insurance company. I'm not an insurer.
 {¶ 40} "* * *
 {¶ 41} "BY THE DEFENSE:
 {¶ 42} "Q. Quick question or two. If you recall, would you have perhaps discussed with your client various sentencing possibilities or scenarios if he had entered the two, plead of the two counts that he did?
 {¶ 43} "A. There were different scenarios, and I'm sure that I covered them with him, and if I might add, the biggest most significant factor was this concurrent sentence. That's what we were worried about because he was already serving in Michigan. If he came over to Ohio, normally Ohio requires you to be in an Ohio prison in order to do the time. So we were pressing, wanting the plea negotiation. We only got one count of rape. For civil liability purposes, we were allowed to plead no contest. The other one was a GSI four or five, if I recall, which was — didn't really matter one way or the other. And to get a concurrent sentence with what was going on up there and to get less than looking for, as close to five as we humanly could, which would have been a grand slam home run, if Foley had given us a five. I consider —
 {¶ 44} "Q. You discussed various sentencing possibilities with him?
 {¶ 45} "A. Absolutely.
 {¶ 46} "Q. As part of your discussions prior to —
 {¶ 47} "A. Absolutely, with the family, all the possible scenarios that could occur.
 {¶ 48} "* * *
 {¶ 49} "BY THE STATE
 {¶ 50} "Q. And with all these different possibly scenarios did you ever promise him one scenario would be the way it would happen?
 {¶ 51} "A. I didn't know myself, couldn't have promised him."
 {¶ 52} We construe O'Brien's testimony as an unequivocal denial that O'Brien ever promised Ruzinsky that he would be released from his Ohio sentence of imprisonment as soon as he was released from his Michigan sentence of imprisonment, as Ruzinsky claims.
 {¶ 53} Ruzinsky's other trial counsel, Jeffrey Slyman, also testified at the hearing, in Ruzinsky's case in rebuttal. His testimony was consistent with O'Brien's, although he acknowledged that there were some meetings between Ruzinsky and O'Brien at which he was not present. Specifically, on cross-examination, Slyman testified as follows:
 {¶ 54} "Q. Prior to the plea, did you talk to the defendant?
 {¶ 55} "A. I think, I think once, one time.
 {¶ 56} "Q. And during that conversation you had with him, did you at any time promise or guarantee him what his sentence would be?
 {¶ 57} "A. No.
 {¶ 58} "Q. Did you ever say I promise you will serve no time in the State of Ohio?
 {¶ 59} "A. No, I did not.
 {¶ 60} "Q. At the time, did you ever hear Mr. O'Brien, who was your co-counsel, at any time promise this defendant that he would do no time in the State of Ohio?
 {¶ 61} "A. No, I never heard him say that.
 {¶ 62} "Q. Did you ever hear him guarantee the defendant what his sentence would be in the State of Ohio?
 {¶ 63} "A. I never heard him say that or make that representation."
 {¶ 64} Both of Ruzinsky's assignments of error depend crucially upon his factual assertion that he was promised by his trial counsel that if he took the plea bargain and pled no contest, he would get concurrent sentences (which he did), and that he would never have to serve any prison time in Ohio. O'Brien, the attorney who allegedly made this promise unequivocally denied having made it. The trial court held a hearing on Ruzinsky's motion, and heard this contradictory testimony. The trial court chose to credit O'Brien, not Ruzinsky. We find no abuse of discretion or other error in the trial court's choice to credit O'Brien's testimony.
 {¶ 65} Both of Ruzinsky's assignments of error are overruled.
 IV {¶ 66} Both of Ruzinsky's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J., and Donovan, J., concur.